THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| MARIA ALEJANDRA VIELMA UZCATEGUI,<br><br>                Petitioner,<br><br>v.<br><br>NATE BROOKSBY, Washington County Sheriff, RUBEN LEYVA, Acting Field Office Director, Salt Lake City Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement (ICE/ERO); BRIAN HENKE Field Office Director for Las Vegas/Salt Lake City; KRISTI NOEM, Secretary United States Department of Homeland Security; PAMELA BONDI, U.S. Attorney General,<br><br>                Respondents. | **MEMORANDUM DECISION AND ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS; ORDERING RELEASE AND REPORTS**<br><br>Case No. 4:26-cv-00020-DN-PK<br><br>District Judge David Nuffer |

Petitioner Maria Alejandra Vielma Uzcategui filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241(a), alleging she is being unlawfully confined in violation of the Constitution and laws of the United States.[1] Ms. Vielma challenges her detention by U.S. Immigration and Customs Enforcement's ("ICE") on or about February 12, 2026.[2] Ms. Vielma presented herself with her 5-year-old daughter at the United States' southern border in August

---

[1] Petition for Writ of Habeas Corpus ("Petition"), docket no. 1, filed February 19, 2026. These preliminary facts are not disputed by the United States. Federal Respondents' Response to Order to Show Cause ("Response"), 1–2, docket no. 18, filed February 22, 2026.

[2] The Petition references two dates for the date of Ms. Vielma's arrest: February 11, 2026, and February 12, 2026. *Compare* Petition at 1 *with* Petition at 8–9, 20, ¶¶ 53, 57, 70. It is unclear which date is correct.

2023.[3] They were detained under 8 U.S.C. § 1226[4] and released with conditions about a week later.[5] Ms. Vielma has not violated those conditions.[6] She received no notice of any violation and was not arrested pursuant to a warrant.[7] Ms. Vielma and her daughter have a pending asylum claim.[8]

Ms. Vielma was arrested by ICE agents at her workplace on or about February 12, 2026, at the direction of ICE/ERO Acting Field Office Director Ruben Leyva, Field Office Director Brian Henke, Secretary of Homeland Security Kristi Noem, and U.S. Attorney General Pamela Bondi (collectively, "Federal Respondents").[9] She was held in the Washington County Jail in the custody of Washington County Sheriff Nate Brooksby.[10] Ms. Vielma was transferred to the Henderson [Nevada] Detention Center on or about February 22, 2026,[11] despite a February 20 court order requiring Ms. Vielma to be kept within the District of Utah.[12] Then, after court

---

[3] *Id.* at 6–7, ¶¶ 40, 42.

[4] *Id*. at 3, ¶ 7.

[5] *Id*. at 7, ¶¶ 46–47.

[6] *Id*. at 9, ¶ 63.

[7] *Id.* at 9, ¶ 66; Response at 2; *and* Emails from Counsel Todd Bouton, Assistant United States Attorney, and Benjamin McMurray, Assistant Federal Public Defender, to Judge Nuffer ("Emails from Counsel"), docket no. 33, filed March 5, 2026 (received March 2, 2025 at 1:35 and 4:06 MST).

[8] Petition at 7, ¶ 49; Asylum Application, Exhibit 1 to Petition, docket no. 1-1, filed February 19, 2026; Master Hearing Scheduled for Ms. Vielma's Application for Asylum; Exhibit 6 to Petition, docket no. 1-6, filed February 19, 2026.

[9] *Id.* at 8, ¶ 53.

[10] *Id.* at 8, ¶¶ 57, 60.

[11] Motion to Permit Transfer of Petitioner Maria Alejandra Vielma Uzcategui to a Detention Center in Southern Nevada ("Motion to Permit Transfer"), docket no. 16, filed February 21, 2026; Federal Respondents' Second Supplement to Motion to Permit Transfer of Petitioner Maria Alejandra Vielma Uzcategui to a Detention Center in Southern Utah ("Second Supplement"), at 2, docket no. 19, filed February 23, 2026. Federal Respondents filed three supplements to their Motion to Permit Transfer—it was apparent that the United States could not track nor predict, from one moment to another, the housing of Ms. Vielma—or, aid in determining exactly which date she was transferred.

[12] Emergency Order Concerning Stay of Transfer or Removal, docket no. 9, filed February 19, 2026.

approval, she was moved, temporarily, to a detention center in Eloy, Arizona, which can house women, and this is where she remains currently.[13]

Ms. Vielma argues "[o]nce a noncitizen has been released into the United States and placed into § 1229a proceedings, detention authority arises, if at all, under [8 U.S.C.] § 1226(a)".[14] and not under § 1225.

The United States maintains that the detention and removal of Ms. Vielma is authorized under 8 U.S.C. §§ 1225(b)(2)(A) and 1229a.[15]

The parties submitted memoranda[16] and presented their positions at a status conference[17] following an Order to Show Cause.[18] For the reasons stated below, the Petition is GRANTED, the Motion to Permit Transfer is MOOTED, and Ms. Vielma is ordered released.

---

[13] Docket Text Order 24, filed February 24, 2026.

[14] Petition at 14, ¶ 104.

[15] Response at 2–3.

[16] Petition, docket no. 1, filed February 19, 2026; Motion to Permit Transfer, docket no. 16, filed February 21, 2026; Supplement to Motion to Permit Transfer of Petitioner Maria Alejandra Vielma Uzcategui to A Detention Center in Southern Nevada ("First Supplement"), docket no. 17, filed February 22, 2026; Response, docket no. 18, filed February 19, 2026; Second Supplement, docket no. 19, filed February 23, 2026; Third Supplement to Motion to Permit Transfer of Petitioner Maria Alejandra Vielma Uzcategui (Now) to a Detention Center in Southern Arizona (URGENT REQUEST!) ("Third Supplement"), docket no. 23, filed February 23, 2026; Representation Re: Motion to Permit Transfer of Petitioner Maria Alejandra Vielma Uzcategui (Now) to a Detention Center in Southern Arizona ("Representation from Federal Respondents"), docket no. 25, filed February 23, 2026; Petitioner's Reply in Support of Petition for Writ of Habeas Corpus ("Reply"), docket no. 27, filed February 27, 2026.

[17] Minute Entry No. 28, filed March 2, 2026; *March 2, 2026, Hearing Transcript for Vielma v. Brooksby* ("Hearing Transcript"), docket no. __, filed _____.

[18] Order to Show Cause, docket no. 14, filed February 20, 2026.

## Contents

1 BACKGROUND ............................................................................................................ 4
2 LEGAL STANDARD ................................................................................................... 9
3 DISCUSSION ................................................................................................................ 9
    3.1      Section 1226 Governs Ms. Vielma's Detention ................................................. 10
    3.2      Ms. Vielma's Liberty Interests Vested in September 2023 ................................. 15
    3.3      Federal Respondents Have No Statutory Authority to Continue Detaining Ms. Vielma .................................................................................................................. 20
    3.4      No Deference Is Owed to Federal Respondents' Reading of the INA ................ 22
    3.5      Release is the Appropriate Remedy .................................................................... 23
4 ORDER ........................................................................................................................ 24

# 1    BACKGROUND

Petitioner Maria Alejandra Vielma Uzcategui was among many individuals arrested and detained by ICE officers "following a tip that suspected illegal aliens were manipulating the Walmart Spark delivery program."[19] Specifically, Ms. Vielma was pulled over on or about February 12, 2026 related to this tip.[20] ICE arrested Ms. Vielma for allegedly violating Immigration and Nationality Act ("INA") Section 235, which corresponds with 8 U.S.C. § 1225,[21] despite Mr. Vielma's lack of criminal history, no outstanding warrants, and no history of gang affiliation.

Ms. Vielma is a 28-year-old native of Venezuela and a noncitizen resident of the United States.[22] Ms. Vielma fled tortuous conditions in Venezuela for the United States.[23] Ms. Vielma's

---

[19] Emails from Counsel, docket no. 30; *see also* Petition at 8, ¶¶ 55–59 (noting that Petitioner's boyfriend was also arrested and detained); *see also Velasquez v. Brooksby, et al.*, No. 4:26-CV-00018-DN-PK, 2026 WL 592355 (D. Utah March 3, 2026). Recent news reports place no fault on the Spark program drivers but on Walmart. The Spark Driver Program enforcement action by the United States Department of Commerce resulted in *Walmart* paying about $100 million dollars to states and consumers. "The settlement resolves allegations that Walmart misrepresented pre-tip amounts, base pay and incentive pay to drivers. While Walmart showed one offer to the driver, the company would split or change parts of the order after the driver accepted the offer and ultimately, the driver received less than the base pay or the full tip or the base pay. Walmart also failed to pay drivers for completing incentives by not disclosing the full incentive requirements . . . ." Utah reaches financial settlement with Walmart over Spark Driver Program controversy (March 5, 2026).

[20] Emails from Counsel, docket no. 29.

[21] Response at 3.

[22] Petition at 1–2, ¶ 1.

[23] *Id*. at 2, ¶ 2.

detailed declaration recounts how the Maduro regime subjected Ms. Vielma and her family to an escalating campaign of violence and intimidation, including death threats, tear gas, gun pellets, assault, and ultimate kidnapping.[24] Ms. Vielma was registered to the Voluntad Popular ("Popular Will") party, opposing the Maduro regime,[25] and her kidnappers told her the kidnapping was related to an Instagram comment made on Maikel Moreno's Instagram post, then chief judge of the Supreme Tribunal of Justice (Venezuela's highest court).[26] After the regime kidnapped her and sent death threats, Ms. Vielma and her daughter fled Venezuela.[27]

Ms. Vielma entered the United States with her 5-year-old daughter at the southern border in August 2023.[28] She crossed the southern border and "could see U.S. Customs and Border Protection ("CBP") officers on the other side, who watched them make their way across the river."[29] Those CBP officers then arrested and detained Ms. Vielma until September 10, 2023, when an Order of Release on Recognizance ("ORR") was issued, which states she was in removal proceedings under "section 240 of the Immigration and Nationality Act.[30] That section of the Act is codified as 8 U.S.C. § 1226. CBP issued Ms. Vielma a Notice to Appear ("NTA"), thereby initiating a removal proceeding against her under 8 U.S.C. § 1229a.[31]

---

[24] Exhibit 2 to Petition, Asylum Declaration ("Ms. Vielma's Declaration"), docket no. 1-2, filed February 19, 2026.

[25] Petition at 3, ¶ 7; *see also* Wil S. Hylton, *Leopoldo López Speaks Out, and Venezuela's Government Cracks Down*, N.Y. Times Magazine (March 9, 2018), https://www.nytimes.com/2018/03/09/magazine/leopoldo-lopez-speaks-out-and-venezuelas-government-cracks-down.html (detailing the Maduro regime's intensified crackdown on the opposition party Voluntad Popular, with over ninety members detained in March 2018).

[26] *Id.* at 4, ¶ 20; *see generally* Ms. Vielma's Declaration.

[27] Petition at 3, ¶¶ 3-4.

[28] *Id*. at 7, ¶ 42.

[29] *Id.* at 7, ¶ 43.

[30] *Id.* at 7, ¶¶44-46; Exhibit 4 to Petition, Order of Release on Recognizance, docket no. 1-4, filed February 14, 2026;  *see also* Hearing Transcript.

[31] *Id.* at 7, ¶ 46, Exhibit 3 to Petition, Notice to Appear, docket no. 1-3, filed February 19, 2026 (stating it is "In removal proceedings under section 240 of the Immigration and Nationality Act.") Section 240 of the INA refers to 8

The NTA charged Ms. Vielma with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) and stated: "You are subject to removal . . . in that you are an alien present in the United States without being admitted or paroled, or who entered in the United States at any time or place other than as designated by the Secretary of the Department of Homeland Security."[32] The NTA alleged: "You entered in the United States at or near BROWNSVILLE, TX, on or about September 9, 2023[.] You were not then admitted or paroled after inspection by an Immigration Officer."[33] The NTA then ordered Ms. Vielma to appear before an Immigration Judge in West Valley City, Utah, on April 26, 2024.[34]

Federal Respondents agree that CBP released Ms. Vielma on September 10, 2023, on her own recognizance, but argue that she is now detained under 8 U.S.C. 1225(b)(2)(A).[35] The ORR contradicts that position: "You have been arrested and placed in removal proceedings. In accordance with section 236 of the Immigration and Nationality Act ("INA") and the applicable provisions of Title 8 of the Code of Federal Regulations, you are being released on your own recognizance provided you comply with [stated] conditions."[36] (Section 236 of the INA is codified in Title 8 U.S.C. § 1226.[37])

---

U.S.C. § 1229a. U.S. Citizenship and Immigr. Servs., *Immigration and Nationality Act* (last updated July 10, 2019), https://www.uscis.gov/laws-and-policy/legislation/immigration-and-nationality-act.).

[32] Exhibit 3 to Petition, Notice to Appear, docket no. 1-3, filed February 14, 2026.

[33] *Id.*

[34] *Id.*

[35] Response at 2–3; *see also* Exhibit 4 to Petition, Order of Release on Recognizance, docket no. 1-4, filed February 14, 2026.

[36] Exhibit 4 to Petition, Order of Release on Recognizance; INA § 236 is codified at 8 U.S.C. § 1226.

[37] U.S. Citizenship and Immigr. Servs., *Immigration and Nationality Act* (last updated July 10, 2019), https://www.uscis.gov/laws-and-policy/legislation/immigration-and-nationality-act).

Ms. Vielma then travelled to Salt Lake City, Utah, where she had friends and relatives, and from there participated in immigration proceedings as required.[38] On September 1, 2024, Ms. Vielma filed her Form I-489 application for asylum.[39] After filing her Asylum Application, an individual asylum hearing was set for Ms. Vielma and her daughter on July 1, 2027, in West Valley, Utah.[40] On February 21, 2025, Ms. Vielma was granted an employment authorization.[41]

U.S. military forces captured President Nicolás Maduro and his wife at their compound in Caracas and transported them to New York on January 3, 2026.[42] Following Maduro's capture, Delcy Rodríguez, Venezuela's former vice president and oil minister, was sworn in as interim president. Maduro's political party, PSUV, has not been removed from power, and now Interim President Rodríguez heads both Venezuela and the PSUV.[43] Maikel Moreno has not been captured and is considered one of the United States' most wanted fugitives.[44]

On or about February 12, 2026, law enforcement arrested Ms. Vielma mid-shift at a Walmart store in Washington County, Utah.[45] Ms. Vielma was not arrested for committing a

---

[38] Petition at 7, ¶¶ 45–48, 50.

[39] Petition at 7, ¶ 49; Exhibit 1 to Petition, Asylum Application.

[40] Exhibit 6 to Petition, Master Hearing Scheduled for Ms. Vielma's Application for Asylum.

[41] Exhibit 5 to Petition, Notice of Action, Approval Notice, docket 1-5, filed February 19, 2026.

[42] Cong. Research Serv., IF12930, *U.S. Capture of Venezuela's Nicolás Maduro: Considerations for Congress*, https://www.congress.gov/crs-product/IN12618 (January 12, 2026).

[43] *Id*.

[44] U.S. Immigration & Customs Enforcement, *$5M Reward Offered for Information Leading to Arrest, Conviction of Venezuelan Official Investigated by ICE HSI* (July 21, 2020), archived at https://www.ice.gov/news/releases/5m-reward-offered-information-leading-arrest-conviction-venezuelan-official.

[45] Petition at 8, ¶ 57.

crime, but simply for her immigration status;[46] she has no criminal history in the United States and has violated no conditions of the ORR.[47]

Because ICE does not have detention facilities or contracts with independent detention facilities in Utah that can accommodate detainees for longer than 72 hours, ICE transferred Ms. Vielma to the Henderson Detention Center in Nevada.[48] Following her detention, the Executive Office of Immigration Review (EOIR) cancelled Ms. Vielma's July 1, 2027, individual hearing regarding her asylum claims.[49] It is unclear whether Ms. Vielma's daughter is still scheduled for her asylum hearing.

Ms. Vielma has a date set before an Immigration Judge in Las Vegas for a master calendar hearing on March 16, 2026, unless an earlier date comes available in Eloy, Arizona.[50] No date is set for her asylum hearing. Ms. Vielma remains in removal proceedings under 8 U.S.C. § 1229a, and her asylum application is still pending before the immigration court.[51] The government maintains that her detention is governed by 8 U.S.C. § 1225(b).[52] The parties agree that her asylum petition has not yet been addressed on the merits.[53]

---

[46] Response at 2. The government provided no foundation for its assertion that Spark program drivers were themselves investigate – see above page 2, note 5. As cited there, news reports indicate that fault was with Walmart.

[47] *See id.*; *see also* Petition at 8, ¶ 52.

[48] Third Supplement at 2, ¶ 1–4.

[49] Response at 3. Federal Respondents have not explained why this hearing date was cancelled.

[50] Minute Entry No. 28.

[51] *Id.*; *see also* Response at 3.

[52] Response at 3.

[53] *Id.*; Petition at 15.

## 2  LEGAL STANDARD

A district court may grant a writ of habeas corpus to any person who "is in custody in violation of the Constitution or laws or treaties of the United States."[54] This includes challenges to immigration detention.[55] The individual in custody bears the burden of establishing that detention is unlawful.[56]

## 3  DISCUSSION

The legal questions presented are complex and evolving.  "As the Ninth Circuit has noted, the INA has been compared to a 'morass,' a 'Gordian knot,' and 'King Minos's labyrinth in ancient Crete.'"[57] Courts in this district,[58] this circuit,[59] and across the country[60] have been

---

[54] 28 U.S.C. § 2241(c)(3).

[55] *Zadvydas v. Davis*, 533 U.S. 678, 687, 121 S. Ct. 2491, 2497, 150 L. Ed. 2d 653 (2001).

[56] *Tanchez v. Noem*, No. 2:25-cv-1150, 2026 WL 125184, at *4 (D. Utah January 16, 2026).

[57] *Maldonado Vazquez v. Feeley,* 805 F.Supp.3d 1112, 1137 (D. Nev. 2025) (quoting *Torres v. Barr*, 976 F.3d 918, 923 (9th Cir. 2020)).

[58] *Tanchez,* 2026 WL 125184 at *10; *Carbajal v. Wimmer*, No. 2:26-CV-00093, 2026 WL 353510 (D. Utah February 9, 2026); *Cisneros v. Noem*, No. 2:25-CV-1170-HCN, 2026 WL 396300 (D. Utah February 12, 2026); *Vasquez v. Noem, et al.*, No. 2:25-CV-01146-JNP, 2026 WL 309631 (D. Utah February 5, 2026); *Reyes v. United States Immigr. & Custom Enf't*, No. 2:25-CV-01159 TC, 2026 WL 266952 (D. Utah February 2, 2026); *Velasquez v. Brooksby*, No. 4:26-CV-00018-DN-PK, 2026 WL 592355 (D. Utah March 3, 2026).

[59] *Jose-De-Jose v. Noem*, No. CIV-25-1454-SLP, 2026 WL 360045 (W.D. Okla. February 9, 2026); *Gutierrez Garcia*, No. 2:25-CV-001145-WJ-KRS, 2026 WL 310064 (D.N.M. February 5, 2026); *Hernandez v. Baltazar*, No. 1:25-CV-03094-CNS, 2025 WL 2996643 (D. Colo. October 24, 2025); *Gutierrez Sosa v. Holt*, No. CIV-25-1257-PRW, 2026 WL 36344 at **3-5 (W.D. Okla. January 6, 2026); *Montoya v. Holt*, No. CIV-235-1231-JD, 2025 WL 3733302 at **5-12 (W.D. Okla. December 26, 2025); *Toledo Santos v. Grant*, No. CIV-25-1433-SLP, 2026 WL 184287 (W.D. Okla. January 23, 2026).

[60] *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *2 (N.D. Cal. September 12, 2025); *Bautista v. Santacruz* ("*Bautista I*"), No. 5:25-CV-01873-SSS-BFM, 2026 WL 468284 (C.D. Cal. February 18, 2026); *Bautista v. Santacruz* ("*Bautista II*") No. 5:25-CV-01873-SSS-BFM, 2025 WL 3713987 (C.D. Cal. December 18, 2025), *judgment entered sub nom. Maldonado Bautista v. Noem*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3678485 (C.D. Cal. December 18, 2025); *E.C. v. Noem*, No. 2:25-CV-01789-RFB-BNW, 2025 WL 2916264 (D. Nev. October 14, 2025); *Patel v. Crowley*, No. 25 C 11180, 2025 WL 2996787 (N.D. Ill. October 24, 2025); *N-E-M-B v. Wamsley*, No. 3:25-CV-989-SI, 2025 WL 3527111 (D. Or. December 9, 2025); *Faizyan v. Casey*, 2025 WL 3208844, at *4-6 (S.D. Cal. November 17, 2025); *Lepe v. Andrews*, --- F. Supp. 3d ----, 2025 WL 2716910, at *4-9 (E.D. Cal. September 23, 2025); *Petion v. Hyde*, No. 2:25-CV-00535-SDN, 2025 WL 3072567 (D. Me. November 3, 2025); *Da Cunha v. Freden*, No. 25-CV-6532-MAV, 2025 WL 3280575 (W.D.N.Y. November 25, 2025); *Huang v. Almodovar*, No. 25 CIV. 9346 (DEH), 2025 WL 3295912 (S.D.N.Y. November 26, 2025); *Maldonado v. Cabezas*, No. CV 25-13004, 2025 WL 2985256, at *4 (D.N.J. October 23, 2025); *Briceno Solano v. Mason*, No. 2:26-CV-00045, 2026 WL 311624, at *20 (S.D. W. Va. February 4, 2026); *Tinajero Rodriguez v. Mason, et al.*, No. 2:26-CV-00122, 2026 WL 510426, at *2 (S.D. W. Va. February 24, 2026); *Chavez Ochoa &*

asked to weigh in on the same or similar factual settings in this area of the law.[61] New decisions are issued almost daily. Three other circuits have considered the issues.[62] The Tenth Circuit has not yet issued an opinion on the decisive issues. Federal Respondents acknowledge that no binding authority exists.[63]

After thorough review of the parties' memoranda, the applicable statutes,[64] and persuasive authorities,[65] and the discussion at the status conference, two central legal issues emerge: (1) whether 8 U.S.C. § 1225 or 1226 applies to Ms. Vielma; and (2) whether due process bars Federal Respondents from switching statutory tracks without notice to or cause from Ms. Vielma's activities. Each issue is addressed in turn.

## 3.1  Section 1226 Governs Ms. Vielma's Detention

The parties dispute which Section of the INA governs Ms. Vielma's detention: 8 U.S.C. § 1225 or § 1226. This issue arises because of the new administration's interpretation of the law, rooted in Interim Guidance Regarding Detention Authority for Applicants for Admission ("Interim Guidance")[66] and *Matter of Yajure Hurtado*.[67]

---

*Nunez Lopez v. Mason, et al.,* No. 2:26-CV-00130, 2026 WL 541144, at *2 (S.D. W. Va. February 26, 2026); *Sanchez v. Noem, et. al.*, No. CV 3:26-0067, 2026 WL 483475, at *4 (S.D. W. Va. February 20, 2026); *Dominguez Izaguirre v. Mason, et al.*, No. 2:26-CV-00121, 2026 WL 561235, at *7 (S.D. W. Va. February 27, 2026); *Urquilla-Ramos v. Trump*, No. 2:26-CV-00066, 2026 WL 475069, at *18 (S.D. W. Va. February 19, 2026).

[61] For a relatively current summary of cases, *see* Kyle Cheney, Politico, Even Trump's own appointees are ruling against ICE's mass detention strategy - POLITICO, February 12, 2026.

[62] *Make the Rd. New York v. Noem*, No. 25-5320, 2025 WL 3563313 (D.C. Cir. November 22, 2025); *Castañon-Nava v. U.S. Department of Homeland Security*, 161 F.4th 1048 (7th Cir. 2025); *Buenrostro-Mendez v Bondi*, 166 F.4th 494 (5th Cir. 2026).

[63] *See* Response at 8.

[64] 28 U.S.C. § 2241; 8 U.S.C. § 1225; 8 U.S.C. § 1226.

[65] *Castañon-Nava v. U.S. Department of Homeland Security*, 161 F.4th 1048 (7th Cir. 2025); *Tanchez* 2026 WL 125184 at *10; *Carbajal v. Wimmer*, No. 2:26-CV-00093, 2026 WL 353510 (D. Utah February 9, 2026); *E.C. v. Noem*, No. 2:25-CV-01789-RFB-BNW, 2025 WL 2916264 (D. Nev. October 14, 2025); *Maldonado Vazquez v Feeley*, 805 F.Supp.3d 1112 (D. Nev. September 17, 2025).

[66] *Interim Guidance*, AILA Doc. No. 25071607 (July 8, 2025), available at: https://perma.cc/5GKM-JYGX.

[67] 29 I. & N. December 216, 228 (BIA 2025).

Two judges in this district have already ruled on this issue and reached opposite conclusions.[68] Ms. Vielma seeks an order similar to *Tanchez v. Noem* and *Carbajal v. Wimmer*, consistent with the Seventh Circuit's decision which would entitle her to processing under Section 1226.[69] Ms. Vielma does not seek a bond redetermination hearing; rather, she seeks immediate release.[70] Federal Respondents urge the opposite, asking for an order following *Cisneros v. Noem*[71] and the Fifth Circuit's split decision in *Buenrostro-Mendez v. Bondi*.[72] This would require a complete denial of Ms. Vielma's Petition.[73]

Section 1226(a) provides:

**On a warrant issued by the Attorney General**, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—

(1) may continue to detain the arrested alien; and

(2) may release the alien on—

(A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or

(B) conditional parole; but

(3) may not provide the alien with work authorization (including an "employment authorized" endorsement or other appropriate work permit), unless the alien is lawfully admitted for permanent residence or otherwise would (without regard to removal proceedings) be provided such authorization.[74]

---

[68] *Tanchez,* 2026 WL 125184 at *9; *Carbajal*, 2026 WL 353510 at *8; *Cisneros*, 2026 WL 396300 at *5-*6.

[69] *See generally* Reply at 1-2 (which refers to and attaches Ms. Vielma's counsel's Reply in another case, *see also Velasquez*, 2026 WL 592355 at *5.

[70] Petition at 21.

[71] *Cisneros v. Noem*, No. 2:25-CV-1170-HCN, 2026 WL 396300 (D. Utah February 12, 2026).

[72] 166 F.4th 494 (5th Cir. 2026). Judge Campbell's decision in *Carbajal*, 2026 WL 353510, thoroughly discusses and rejects the majority opinion in *Buenrostro-Mendez*.

[73] Response at 6–8.

[74] 8 U.S.C. § 1226(a) (emphasis added).

11

Section 1226 governs "the usual removal process."[75] The Section 1226 process starts when the government files a Notice to Appear with an immigration court. Section 1226 then lets the government arrest and detain noncitizens or release them on bond or on conditional parole.[76] Release is required if the noncitizen can show they are not a danger and will show up at future hearings.[77] If detention continues, the noncitizen gets a bond hearing before an immigration judge.[78] To be released, noncitizens must show by a preponderance of the evidence that they are not a security threat, not a community danger, and not a flight risk.[79]

The Section 1225 removal process is considered the "expedited removal" process.[80] Section 1225(b)(1) provides that:

> If an immigration officer determines that an alien (other than an alien described in subparagraph (F)) who is arriving in the United States or is described in clause (iii) is inadmissible under section 212(a)(6)(C) or 212(a)(7) [8 U.S.C. § 1182(a)(6)(C) or 1182(a)(7)], the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under section 208 [8 USCS § 1158] or a fear of persecution.[81]

Two groups of noncitizens are subject to 1225 expedited removal.[82] The first group is noncitizens encountered arriving at a port of entry who are inadmissible because they lack proper documents or misrepresented themselves to gain entry.[83] The second group is "designated"

---

[75] *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *2 (N.D. Cal. September 12, 2025) (internal quotations omitted) (quoting *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020)).

[76] *Id*. at *1.

[77] *Id*.

[78] *Id*.

[79] *Id*.

[80] *Id*. at *2.

[81] 8 U.S.C. § 1225(b)(1).

[82] *Tanchez,* 2026 WL 125184 at *5; *Aceros,* 2025 WL 2637503 at *2.

[83] *Tanchez,* 2026 WL 125184 at *5; *Aceros,* 2025 WL 2637503at *2.

noncitizens.[84] To fall into the second group, a person must meet three criteria: (1) they are inadmissible for the same deficient document or misrepresentation reasons; (2) they have not been continuously present in the United States for the two years before the inadmissibility determination; and (3) the Secretary of Homeland Security has specifically designated them for expedited removal.[85]

In *Tanchez v. Noem*, Mr. Tanchez, a citizen of Guatemala located in Utah, filed a petition for a writ of habeas corpus.[86] Mr. Tanchez and his family presented themselves at the U.S. southern border in November 2023, were released by CBP, and applied for asylum.[87] Judge Campbell summarized the application of the relevant statutes:

> INA proposes two detention schemes that are relevant here. The first, under § 1225, applies "primarily to aliens seeking entry into the United States" and requires the detention of noncitizens who do not pass muster during the inspection process. Noncitizens detained under this framework may only be released under the parole provisions contained in § 1182(d)(5). The second detention scheme, under § 1226, is a "default rule" for "aliens already present in the United States" that allows noncitizens to challenge their detention through a bond hearing in front of an Immigration Judge. Noncitizens detained under this framework may be released with a bond or under conditional parole.[88]

After analyzing the statutory text, legislative history, and nearly three decades of agency practice, Judge Campbell concluded "that § 1225 primarily applies to inspections at the border, whereas § 1226 applies to noncitizens living in the country."[89] Judge Campbell granted the

---

[84] *Aceros,* 2025 WL 2637503 at *2.

[85] *Id*. at *2 (*citing Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 109-110 (2020)); *Tanchez,* 2026 WL 12518 at *8.

[86] *Tanchez,* 2026 WL 125184 at *1.

[87] *Id*. at *2.

[88] *Tanchez,* 2026 WL 125184 at *7 (cleaned up) (*citing 8 U.S.C. § 1226(a)(2)*).

[89] *Id*. at *10.

petition for writ and ordered that Mr. Tanchez was entitled to a bond hearing.[90] Judge

Campbell's analysis and result are consistent with the overwhelming majority of cases.[91]

      The facts of *Tanchez* are analogous to Ms. Vielma's case. Both petitioners and their

family presented themselves at the southern border, were released by Federal Respondents under

Section 236 (or § 8 U.S.C. 1226), applied for asylum, and were residing in Utah when they were

detained. Federal Respondents have acknowledged that they "cannot meaningfully distinguish

this case from *Tanchez*."[92]

      Federal Respondents urge adoption of Judge Nielsen's view in *Cisneros v. Noem*.[93] In

*Cisneros*, ICE detained a Mexican citizen who lived in the United States for twenty-one years.[94]

Judge Nielsen discussed the applicability of §§ 1225 and 1226, and *Buenrostro-Mendez*,[95] and

came to the opposite conclusion as Judge Campbell.[96] The *Cisneros* decision is on appeal.[97]

---

[90] *Id*. at *17.

[91] *Id*. at *10-*17; *Gutierrez v. Garcia*, No. 2:25-CV-001145-WJ-KRS, 2026 WL 310064 (D.N.M. February 5, 2026); *Aceros*, 2025 WL 2637503, at *2; *E.C. v. Noem*, No. 2:25-CV-01789-RFB-BNW, 2025 WL 2916264 (D. Nev. October 14, 2025); *N-E-M-B v. Wamsley*, No. 3:25-CV-989-SI, 2025 WL 3527111 (D. Or. December 9, 2025); *Gabriel J. v. Bondi*, No. 26-CV-00865 (SRN/LIB), 2026 WL 295192 (D. Minn. February 4, 2026); *see also* Nate Raymond, Kristina Cooke and Brad Heath, *ICE continues detaining people illegally despite 4,400 court rulings*, MPR News (February 14, 2026), https://www.mprnews.org/story/2026/02/14/ice-continues-detaining-people-illegally-despite-4400-court-rulings.

[92] Response at 6, n.4.

[93] Response at 8.

[94] *Cisneros v. Noem*, No. 2:25-CV-1170-HCN, 2026 WL 396300 (D. Utah February 12, 2026).

[95] 166 F.4th 494 (5th Cir. 2026).

[96] *Id*. at *6-7.

[97] *Cisneros v. Noem*, No. 26-4015 (10th Cir. 2026).

Ms. Vielma correctly points out that the facts of *Cisneros* are distinguishable.[98] *Buenrostro-Mendez v. Bondi*[99] is equally distinguishable and was distinguished by Judge Campbell in *Carbajal*.[100]

Unlike *Cisneros* and *Buenrostro-Mendez*, both *Tanchez* and *Carbajal* share a critical feature with Ms. Vielma's case: pending asylum applications.[101] The INA contains provisions to ensure asylum seekers' petitions are considered before removal.[102] Ms. Vielma's asylum claim should be decided before Federal Respondents can take any further action. The facts and holding of *Cisneros* are distinguishable.

*Tanchez*'s logic and holding are adopted here. Section 1225 is applied at the border, while Section 1226 is applied in the interior of the United States.[103] Because Federal Respondents released Ms. Vielma at the border over two and a half years ago under 8 U.S.C. § 1226 they may only reconsider Ms. Vielma's release status under Section 1226. She was released on conditions. The conditions have not been violated.

### 3.2   Ms. Vielma's Liberty Interests Vested in September 2023

In their memoranda and[104] at the March 2, 2026, status conference[105] Federal Respondents have never explained why Ms. Vielma is being detained other than to refer to an unsupported, arbitrary administrative choice. "She was charged at the time [of entry] with

---

[98] Reply at 1; *see also* Reply in *Velasquez Montillo v. Brooksby, et al.*, No. 4:26-CV-00018-DN-PK, 2026 WL 592355 at *7 (D. Utah March 3, 2026)).

[99] 166 F.4th 494 (5th Cir. 2026).

[100] *Carbajal v. Wimmer*, No. 2:26-CV-00093, 2026 WL 353510 (D. Utah February 9, 2026).

[101] *Id*.

[102] 8 U.S.C. 1182 (a)(9)(B)(iii)(II); 8 U.S.C. § 1225(b)(1)(A)(ii).

[103] *Tanchez*, 2026 WL 125184 at *10.

[104] *Compare* Petition *with* Response.

[105] *March 2, 2026, Hearing Transcript*; *see also* Minute Entry No. 28.

violating INA § 212(a)(6)(A)(i) (8 U.S.C. §1182(a)(6)(A)(i)) (alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General)."[106] Federal Respondents explain that "[a]lmost 2½ years later, under the Trump administration, around February 11 or 12, 2026, Ms. Uzcategui was arrested and detained by ICE pending removal proceedings."[107] At the status conference, when asked directly if there "was no notice from the immigration authorities of her violation of the conditions of her recognizance release"[108] Federal Respondents stated, "Your Honor, I am not aware of any triggering notice before they picked her up, if that's what you're asking."[109] Federal Respondents took the position that Ms. Vielma's Section 1226 status following her September 2023 border processing carried no guarantees that ICE wouldn't change its mind, or change the process from a § 1225 to a § 1226 pathway, or notify an applicant of this change.[110]

Federal Respondents argue they may freely switch between §§ 1226 and 1225.[111] At the March 2, 2026 hearing, Federal Respondents stated that the new administration has decided that they will process these individuals "under 1225[,] the way they believe the administration and prior administrations should have been doing all along."[112] Federal Respondents further explained:

> Your Honor, to be completely candid, I think the United States' position is that it doesn't matter how long you've been in the United States, whether you have a 1226-type notice when you were released near the border after making an asylum claim, or anything like that, if you are not lawfully admitted in the United States under the plain language of Section 1225, you are an applicant for admission, and

---

[106] Response at 2.

[107] *Id.*

[108] *Hearing Transcript*.

[109] *Id.*

[110] *Id.*

[111] *Id.*

[112] *Id.*

subject to mandatory detention without the need for a warrant or regardless of whether you violate the conditions that you were temporarily released under.[113]

In this district [114] and across the country [115] a majority of judges who heard this argument have rejected it.[116] " The statutes are unchanged. Eagerness for a new tool to remove noncitizens does not change the law."[117]

"As numerous courts have observed, the initial decision to pursue petitioner's detention under § 1226(a) precludes the government from later 'switch[ing] tracks' to subject her to mandatory detention under § 1225(b)(2)."[118] The rule is simple: "Sections 1226(a) and 1225(b) cannot be applied simultaneously."[119]

Noncitizen detainees have liberty interests affected by the application of § 1225 or § 1226. Some liberty interests other courts have identified include: due process procedural protections;[120] or reliance interests;[121] "continued freedom from civil immigration

---

[113] *Id.*

[114] *Tanchez,* 2026 WL 125184 at *17; *Carbajal,* 2026 WL 353510 at *7-*8; *Velasquez,* 2026 WL 592355 at *10–11.

[115] *N-E-M-B v. Wamsley*, No. 3:25-CV-989-SI, 2025 WL 3527111 (D. Or. December 9, 2025); *Faiyzan v. Casey*, 2025 WL 3208844, at *4-6 (S.D. Cal. November 17, 2025); *Lepe v. Andrews*, --- F. Supp. 3d ----, 2025 WL 2716910, at *4-9 (E.D. Cal. September 23, 2025); *Petion v. Hyde*, No. 2:25-CV-00535-SDN, 2025 WL 3072567 (D. Me. November 3, 2025); *Da Cunha v. Freden*, No. 25-CV-6532-MAV, 2025 WL 3280575 (W.D.N.Y. November 25, 2025); *Huang v. Almodovar*, No. 25 CIV. 9346 (DEH), 2025 WL 3295912 (S.D.N.Y. November 26, 2025); *Maldonado v. Cabezas*, No. CV 25-13004, 2025 WL 2985256, at *4 (D.N.J. October 23, 2025); *Briceno Solano v. Mason*, 2026 WL 311624, at *20; *Tinajero Rodriguez v. Mason, et al.*, 2026 WL 510426, at *2; *Chavez Ochoa & Nunez Lopez v. Mason, et al.,* 2026 WL 541144, at *2; Sanchez v. Noem, et. al., 2026 WL 483475, at *4 ; *Dominguez Izaguirre v. Mason, et al.*, 2026 WL 561235, at *7; *Urquilla-Ramos v. Trump*, 2026 WL 475069, at *18.

[116] See Kyle Cheney, *Even Trump's own appointees are ruling against ICE's mass detention strategy*, POLITICO (February 12, 2026), https://www.politico.com/news/2026/02/12/donald-trump-judges-mandatory-detention-rulings-00778256.

[117] *Velasquez*, 2026 WL 592355, at *8.

[118] *Gutierrez v. Chesnut*, No. 1:25-CV-01515-DAD-AC (HC), 2025 WL 3514495 (E.D. Cal. December 8, 2025) (*citing Aceros,* 2025 WL 2637503 at *8).

[119] *Aceros,* 2025 WL 2637503 at *8.

[120] *Id*.

[121] *Id*. (*citing Huffman Memorandum* (January 23, 2025) (recognizing that noncitizens granted discretionary parole have "reliance interests")).

confinement"; [122] and "the most significant liberty interest there is—the interest in being free

from imprisonment." [123] Federal Respondents, at the March 2, 2026 hearing, recognized this

liberty interest:

> And yes, . . . the United States recognizes that this is a change, right, that someone
> has been at liberty for some amount of time, so it would seem abrupt on under
> hand, but the United States' position was when they were released it was always
> subject to revocation.  This was not a free pass or a promise to say you can live in
> the United States for centuries. [124]

The government fails to acknowledge that liberty granted, even limited liberty, is

protected by due process safeguards. The Supreme Court has found that a protected liberty

interest may arise from a conditional release from physical restraint. [125] The INA provides that

"[a] noncitizen can be paroled pursuant to 8 U.S.C. § 1182(d)(5)(A) 'for "urgent humanitarian

reasons" or "significant public benefit," provided the [noncitizen] present[s] neither a security

risk nor risk of absconding.'" [126] "Release [therefore] reflects a determination by the government

that the noncitizen is not a danger to the community or a flight risk." [127]

The Tenth Circuit applies the "three distinct factors" established by the Supreme Court in

*Mathews v. Eldridge*. [128] to determine procedures "necessary to ensure that the deprivation of a

protected liberty interest meets the demands of the Constitution," [129] Under *Mathews*, three

factors have emerged to determine whether a person has received sufficient due process before

---

[122] *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475 (S.D.N.Y. 2025).

[123] *Munoz Materano v. Arteta*, 804 F. Supp. 3d 395 (S.D.N.Y. 2025).

[124] *Hearing Transcript*.

[125] *Young v. Harper*, 520 U.S. 143, 147 (1997).

[126] *Martinez v. Chestnut*, 2026 WL 121221, at *3 (quoting 8 C.F.R. § 212.5(b) (quoting 8 U.S.C. § 1182(d)(5)(A)).

[127] *Perry v. Sindermann,* 408 U.S. 593, 601-03 (1972) (finding reliance on governmental representations may
establish a legitimate claim of entitlement to a constitutionally-protected interest).

[128] *Id.*

[129] *Hattrup v. United States*, 845 F. App'x 733, 737 (10th Cir. 2021); *United States v. Muhtorov*, 20 F.4th 558, 623
(10th Cir. 2021); *Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S.Ct 893, 4  L.Ed.2d 18 (1976).

they may be deprived of their liberty. The *Mathews* factors are: "(1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest."[130]

First, Ms. Vielma has a clear interest in remaining free from detention. Federal Respondents released Ms. Vielma in September 2023 under § 1226.[131] Ms. Vielma is entitled to retain the legal protections under § 1226(a) that Federal Respondents cannot erase by simply "switching tracks."[132] For over two and a half years, Ms. Vielma was free from custody, working and supporting her daughter, before her re-detention.[133] The duration of her conditional release elevates and underscores her liberty interests.[134]

The second *Mathews* factor also weighs in Ms. Vielma's favor. Again, civil immigration detention, which is "nonpunitive in purpose and effect" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community.[135] Federal Respondents do not contend that Ms. Vielma is or was a flight risk or a danger to the community.

As to the last *Mathews* factor, the government clearly has an interest in enforcing immigration laws, but Federal Respondents' interest in detaining petitioner without a warrant, notice to appear, or any justifiable reasonable explanation for her detention is "low."[136] Thus, there is no apparent governmental interest favoring Ms. Vielma's continued detention without some justification for how she has violated the conditions set forth in her ORR.

---

[130] *Martinez v. Chestnut*, No. 1:25-CV-1826 TLN CKD P, 2026 WL 121221, at *3 (E.D. Cal. January 16, 2026); *see also Mathews v. Eldridge*, 424 U.S. 319, 332.

[131] Exhibit 4, Order of Release on Recognizance; INA § 236 is codified at 8 U.S.C. § 1226.

[132] *Aceros,* 2025 WL 2637503 at *8 (*citing Lopez Benitez* at *5); *Briceno Solano v. Mason*, 2026 WL 311624 at *14.

[133] *See* Petition at 2.

[134] *See Martinez v. Chestnut*, 2026 WL 121221, at *3.

[135] *Zadvydas*, 533 U.S. at 690.

[136] *See Martinez v. Chestnut*, 2026 WL 121221, at *3.

Ms. Vielma's prior release on parole created a reasonable expectation that she would be entitled to retain her liberty as long as she was not a flight risk, presented herself at any hearings she was given notice of, and did not pose a danger to the community.[137] Federal Respondents cannot identify any change in Ms. Vielma's behavior that justifies revocation of her conditional release. Ms. Vielma must be released.

### 3.3 Federal Respondents Have No Statutory Authority to Continue Detaining Ms. Vielma

8 U.S.C. § 1226 governs. Federal Respondents may not continue Ms. Vielma's detention under § 1225. § 1226 provides two provisions from which Federal Respondents may detain noncitizens: (1) mandatory detention under § 1226(c); and (2) permissive detention under § 1226(a).

§ 1226(c) requires a qualifying criminal offense before Federal Respondents take a noncitizen into custody. In *Alvarez v. LaRose,*[138] ICE detained a Mexican national in San Diego who had committed no crime.[139] The court held that § 1226(c) permits mandatory detention only if two conditions are met: (1) the petitioner is "[a]n alien present in the United States without having been admitted or paroled"; and (2) the petitioner "has been arrested for or committed an enumerated crime."[140] The petitioner satisfied the first condition but not the second. The court ordered immediate release.[141] Similarly, Ms. Vielma does not satisfy the second condition. All parties agree Ms. Vielma has committed no crime.[142]

---

[137] *See Perry v. Sindermann*, 408 U.S. 593.

[138] *Alvarez v. LaRose*, No. 25-CV-3078-RSH-MMP, 2025 WL 3443162 (S.D. Cal. December 1, 2025).

[139] *Id*. at *1-2.

[140] *Id*. at *3.

[141] *Id*. at *4.

[142] *Hearing Transcript*.

§ 1226(a) requires a warrant. The statute provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States."[143] In *Gabriel J*.[144] ICE, without a warrant, detained a Venezuelan national in St. Paul, Minnesota who had a pending asylum claim.[145] The court determined § 1226, not § 1225, governed the petitioner's detention.[146] ICE could not produce a warrant or identify any other lawful basis for detention. The court ordered immediate release.[147]

At the status conference, Federal Respondents were asked if there was a warrant issued.[148] Federal Respondents stated that they were "not aware of one. It seems – my understanding is that ICE is picking up people in this situation who it deems to have been not lawfully admitted to the United States within a period of time."[149] No warrant appears anywhere in Federal Respondents' filings.[150]

Federal Respondents do not satisfy the preconditions for detention under § 1226(a) or (c). Therefore, the logic of *Gabriel J.* and *Alvarez* compel the same result here. Federal Respondents can produce neither an arrest warrant nor evidence of a qualifying crime. Immediate release is the only appropriate remedy. Federal Respondents will be ordered to release Ms. Vielma immediately from the Eloy, Arizona Detention Center.

---

[143] 8 U.S.C. § 1226(a).

[144] *Gabriel J. v. Bondi*, No. 26-CV-00865 (SRN/LIB), 2026 WL 295192 (D. Minn. February 4, 2026).

[145] *Id*. at *1.

[146] *Id*. at *2-3.

[147] *Id*. at *3.

[148] *Hearing Transcript*

[149] *Id.*

[150] *See* Motion to Permit Transfer; First Supplement; Second Supplement; Third Supplement; *and* Representation.

### 3.4    No Deference Is Owed to Federal Respondents' Reading of the INA

The Federal Respondents' reading of the INA is not entitled to deference.[151] In

*Roshniashvili v. Allen*, the petitioner was a Georgian national who entered the United States on

December 24, 2022.[152] Mr. Roshniashvili timely made an asylum application, obtained work

authorization, maintained a clean criminal record, and met every obligation imposed by

immigration authorities.[153] ICE nonetheless arrested him on an interstate highway under § 1225

for a "redetermination" based on the July 2025 interim guidance and *Hurtado*.[154] Mr.

Roshniashvili filed a habeas petition challenging his detention.[155]

*Roshniashvili* held that DHS's statutory interpretation was owed no deference under

*Loper Bright v. Raimondo*.[156] The court determined that § 1226, not § 1225, applies to

noncitizens already present in the country while removal proceedings are pending.[157] Section

1226(a) permits arrests only with a warrant issued by the Department of Homeland Security

Secretary. No such warrant was issued for Mr. Roshniashvili.[158] The petition was granted, and

Mr. Roshniashvili's immediate release was ordered.[159]

---

[151] *Roshniashvili v. Allen, et al.*, No. 2:26-CV-00093, 2026 WL 446657 (S.D. W. Va. February 17, 2026); *Galvan Lopez v. Noem*, No. 2:25-CV-1288 JB/DLM, 2026 WL 252513 (D.N.M. January 30, 2026); *Camacho v. Perry*, No. 3:26-CV-76, 2026 WL 414937 (E.D. Va. February 15, 2026); *Fuentes Herrera v. Noem*, No. 4:26-CV-45-RGJ, 2026 WL 561102 (W.D. Ky. February 27, 2026); *Eastern Division Nolvin Ismael Herrera v. Secretary of the U.S. Department of Homeland Security, et al*., No. 4:26-CV-00125-JRK, 2026 WL 554707 (N.D. Ohio February 27, 2026); *Ruiz v. Olson, et al*., No. 4:26-CV-51-RGJ, 2026 WL 483478 (W.D. Ky. February 20, 2026); *Cordova v. Noem*, No. 3:26-CV-97-K-BN, 2026 WL 218938 (N.D. Tex. January 28, 2026).

[152] *Roshniashvili*, No. 2:26-CV-00093 at *1.

[153] *Id*. at *5-*6.

[154] *Id*. at *1.

[155] *Id*. at *5.

[156] *Id*. at *4 (*citing Loper Bright v. Raimondo,* 603 U.S. 369, 403 (2024)).

[157] *Id*. at *6.

[158] *Id*.

[159] *Id*. at *8.

The Federal Respondents claim Ms. Vielma, like Mr. Roshniashvili, was detained under § 1225 after being inspected at the border and paroled under §1226. She has a pending asylum claim, was not accused of a crime, and was arrested without a warrant. The longstanding practice of the government has been to process noncitizens under § 1226, and not under § 1225, as multiple courts have found.[160] While the current interpretation does not require deference, "the longstanding practice of the government"[161] does deserve deference.

### 3.5   Release is the Appropriate Remedy

"If the imprisonment cannot be shown to conform with the fundamental requirements of law, the individual is entitled to his immediate release."[162] That standard is met here.

Federal Respondents argue that ICE detained Ms. Vielma "pursuant to 8 U.S.C. §§ 1225(b)(2)(A) and 1229a."[163] But Federal Respondents cannot apply § 1225 to Ms. Vielma. Her continued detention under that statute is unlawful. Federal Respondents cannot fall back on § 1226 as they have not established the statutory conditions for either mandatory or permissive detention under § 1226. Ms. Vielma has requested immediate release from custody[164] and is entitled to that relief.

Many orders in similar cases require that a bond hearing be set in a short period of time with an automatic release if the hearing does not occur.[165] Those cases do not examine the effect

---

[160] *Kazybayeva v. Warden of Otay Mesa Det. Ctr.*, No. 26-CV-0421-GPC-MMP, 2026 WL 280478, at *2 (S.D. Cal. February 3, 2026); *Lagarda-Vega v. Noem*, No. 3:25-CV-02970-GPC-DDL, 2025 WL 3558931, at *4-*7 (S.D. Cal. December 11, 2025).

[161] *Loper Bright*, 603 U.S. at 368.

[162] *United States v. Allen*, 139 F.3d 913 (10th Cir. 1998) (*quoting Johnson v. Rogers*, 917 F.2d 1283, 1284 (10th Cir.1990)).

[163] Response at 2.

[164] Petition at 21.

[165] *Ramirez v. Baltasar*, No. 26-CV-00199-NYW, 2026 WL 318989, at *4 (D. Colo. February 6, 2026); *Escobar v. Baltazar*, No. 26-CV-00296-NYW, 2026 WL 503313, at *6 (D. Colo. February 24, 2026); *Jhony A. v. Bondi*, No. 26-CV-146 (JMB/LIB), 2026 WL 114334, at *3 (D. Minn. January 15, 2026); *Sales Ambrocio v. Noem*, No.

of a pending asylum petition, effect of a petition not seeking, or a clear conditional release order

under § 1226. Ordering a bond was an option on September 10, 2023, but the officer elected not

to require it. Ms. Vielma was released on conditions. Immigration officers and judges believe

they are bound by erroneous administrative guidance and by an erroneous BIA decision to not

offer release on bond. [166] They do not recognize court orders vacating these administrative

directions. [167] The numerous habeas petitions filed daily since this administrative change confirm

the ICE pattern of persisting in erroneous administrative guidance and feel entitled to ignore

judicial orders. [168] As in those cases, Ms. Vielma received no notice of any change in

circumstances that would require modification of her September 10, 2023 ORR.

## 4   ORDER

IT IS HEREBY ORDERED THAT Ms. Vielma's Petition for Writ of Habeas Corpus. [169]

is GRANTED.  And, the Federal Respondents' Motion to Permit Transfer of Petitioner. [170] is now

MOOT.

---

4:25CV3226, 2025 WL 3295530, at *7 (D. Neb. November 25, 2025); *Gutierrez v. Garcia*, No. 2:25-CV-001145-WJ-KRS, 2026 WL 310064 (D.N.M. February 5, 2026).

[166] Interim Guidance Regarding Detention Authority for Applicants for Admission, AILA Doc. No. 25071607 (July 8, 2025), available at: https://perma.cc/5GKM-JYGX and *Matter of Yajure Hurtado*. 29 I. & N. December 216, 228 (BIA 2025).

[167] *Bautista II* at *3, *5, *9, and *10. The government is currently advertising for judges to "[p]reside over cases in federal Immigration Court," but the job description title calls these judges "deportation judges." *You Be the Judge*, U.S. Dep't of Just., https://join.justice.gov/ (last visited Mar. 5, 2026). The statutory and regulatory title is "Immigration Judge." 8 C.F.R. § 1003.19(a).

[168] *See* cases cataloged in Kyle Cheney, *How ICE defies judges' orders to release detainees, step by step,* POLITICO, (February 10, 2026, 5:00 AM).

[169] Petition for Writ of Habeas Corpus, docket no. 1, filed February 19, 2026.

[170] Motion to Permit Transfer of Petitioner Maria Alejandra Vielma Uzcategui to a Detention Center in Southern Nevada, docket no. 16, filed February 21, 2026.

IT IS FURTHER ORDERED:

1.      Federal Respondents must immediately release Ms. Vielma under the terms set in the September 10, 2023, Order of Release on Recognizance.[171]

2.      Within 4 business hours of the issuance of this order, Respondents must file a report on the status of their compliance with this order to release Ms. Vielma.

3.      Federal Respondents must reinstate Ms. Vielma's July 1, 2027, asylum hearing date and location with her daughter, and file a copy of that notice with this court.

4.      The United States must not again attempt to use 8 U.S.C. § 1225 to detain Ms. Vielma.

5.      Any request by Ms. Vielma to recover fees or costs must be made by motion.

Signed March 5, 2026.

BY THE COURT

David Nuffer
United States District Judge

---

[171] Docket no. 1-4, filed February 19, 2026.